[Cite as *B&B Contrs. & Developers, Inc. v. Olsavsky Jaminet Architects, Inc.*, 2012-Ohio-5981.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| B&B CONTRACTORS & DEVELOPERS, INC., | ) ) ) | CASE NO.   12 MA 5 |
| PLAINTIFF-APPELLANT/ CROSS-APPELLEE, | ) ) ) ) | |
| VS. | ) ) | O P I N I O N |
| OLSAVSKY JAMINET ARCHITECTS, INC., | ) ) ) ) | |
| DEFENDANT-APPELLEE/ CROSS-APPELLANT. | ) ) ) | |

CHARACTER OF PROCEEDINGS:       Civil Appeal from Common Pleas Court, Case No. 09CV504.

JUDGMENT:       Affirmed in part; Reversed in part; Remanded.

APPEARANCES:
For Plaintiff-Appellant/ Cross-Appellee:

Attorney Christopher Opalinski
Attorney Jacob McCrea
U.S. Steel Tower, 44th Floor
600 Grant Street
Pittsburgh, Ohio  15219-2788

For Defendant-Appellee/ Cross-Appellant:

Attorney John Cubar
Attorney Brian Winchester
123 West Prospect Avenue, Suite 250
Cleveland, Ohio  44115

JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Cheryl L. Waite

Dated: December 14, 2012

VUKOVICH, J.

{¶1} This case presents cross-appeals by plaintiff B&B Contractors & Developers, Inc. (B&B) and defendant Olsavsky Jaminet Architects, Inc. (OJA) regarding a judgment for B&B that was entered after a jury trial in the Mahoning County Common Pleas Court. B&B first argues that the trial court erred when it granted a partial judgment on the pleadings and ruled that B&B could not seek indemnification for attorney fees that B&B paid to its client under an arbitration award resulting from OJA's architectural negligence. We conclude that this argument has merit as the trial court erroneously treated this portion of B&B's damages as typical attorney fees when it was actually just part of the damages B&B had suffered due to OJA's negligence. Therefore, the trial court's decision barring evidence of the attorney fees B&B paid to its client as a result of OJA's negligence is reversed, and this portion of the case is remanded for further proceedings.

{¶2} B&B also contends that the trial court erred in granting directed verdict on its breach of contract claim and asks us to rule that the breach of contract claim was not barred merely because the case contained a professional negligence claim dealing with the same conduct. We advised that if we were to rule in favor of B&B on this issue, we would reverse and remand for a new trial in toto because the two claims are so intertwined. As a result, B&B withdrew this assignment of error from our consideration at oral argument.

{¶3} In its cross-appeal, OJA claims that the trial court abused its discretion in denying their request for various jury instructions and interrogatories. OJA also alleges that the court erred in denying its motion for direct verdict, claiming that the restoration costs were not shown to be reasonable by expert testimony, that there was no evidence on diminution in value which should cap restoration costs, and that B&B cannot make a claim for implied indemnification because B&B allegedly admitted it was actively negligent. We conclude that the arguments presented in OJA's cross-appeal are without merit. The trial court's judgment on these matters is therefore affirmed.

## STATEMENT OF THE CASE

{¶4} B&B entered into an agreement to build an ice rink for the Gilmour Academy in Gates Mills, Ohio. B&B was the general trades construction contractor, which did not include the mechanical, electrical, or plumbing trades. B&B contracted with OJA to provide the architectural design and to assist in coordinating with the other engineering disciplines, those who were not working under B&B.

{¶5} After construction, Gilmour made a demand for arbitration under the contract with B&B due to mold growth said to be the result of a design defect. The arbitrator awarded Gilmour $700,902, which sum included $225,000 in attorney fees incurred by Gilmour. Pursuant to a later settlement agreement, this total award against B&B was reduced to $595,000, which amount B&B then paid to Gilmour.

{¶6} In 2009, B&B filed a complaint against OJA raising claims for breach of contract, professional negligence, and indemnification. B&B sought to recover damages equal to the amount it paid to Gilmour. Originally, B&B also sought to recover the attorney fees it incurred in defending the arbitration suit, but B&B was later reimbursed for these fees by its insurance carrier. B&B did not seek to recover its attorney fees incurred in the current civil suit.

{¶7} OJA filed a motion for partial judgment on the pleadings solely regarding B&B's request for attorney fees, emphasizing that Ohio follows the American rule which requires each party to pay their own attorney fees. OJA noted that B&B was liable for attorney fees to Gilmour due to the contractual provisions between those parties. OJA pointed out that there was no agreement for attorney fees in the contract it entered with B&B and thus concluded that no exception to the American rule applied.

{¶8} B&B responded by urging the application of the indemnification exception to the American rule and alternatively stating that the rule requiring each party to pay his own fees has no applicability where the fees sought are those paid by one party to a third party. At the beginning of the December 2011 jury trial, the trial court granted OJA's motion for partial judgment on the pleadings, holding that B&B cannot recover the amount B&B paid to Gilmour for Gilmour's attorney fees. (Tr. 20-21).

**{¶9}** After B&B presented its evidence, OJA moved for directed verdict on various grounds. The court granted directed verdict on B&B's breach of contract claim, finding it duplicative of their professional negligence claim. (Tr. 637-638). The court denied the portion of OJA's motion for directed verdict which claimed that B&B admitted it was actively negligent and thus could not seek indemnification. (Tr. 645, 835). The court also denied OJA's motion regarding damages, ruling that there was evidence on the reasonableness of restoration costs and that the realty's diminution in value was not a required element of B&B's damages. (Tr. 622, 645, 835).

**{¶10}** The jury returned a verdict in favor of B&B and against OJA. The jury answered interrogatories, determining that: OJA was negligent in providing architectural service; OJA's negligence was the proximate cause of B&B's damages; B&B incurred $395,095.75 in damages as a result of the negligence of OJA and/or anyone else's negligence; B&B was not comparatively negligent; and OJA did not prove that anyone else was negligent. Thus, on December 12, 2011, the trial court entered judgment in favor of B&B for $395,095.75. Both parties filed timely cross-appeals from this entry.

B&B'S ASSIGNMENT OF ERROR NUMBER ONE

**{¶11}** B&B sets forth two assignments of error, the first of which alleges:

**{¶12}** "THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT RULED THAT THE ATTORNEYS' FEES AWARDED AS DAMAGES AGAINST B&B IN THE UNDERLYING ARBITRATION ARE NOT RECOVERABLE DAMAGES BY B&B IN THIS CASE."

**{¶13}** Pursuant to the American Rule, which is followed in Ohio, each party in a lawsuit must generally bear its own attorney fees. *Krasny-Kaplan Corp. v. Flo-Tork, Inc.*, 66 Ohio St.3d 75, 77, 609 N.E.2d 152 (1993). Exceptions exist where there is statutory authorization for attorney fees in a certain action, bad faith, or a contractual fee-shifting agreement. *Id.* at 77-78. In discussing exceptions to the American rule as relating to co-defendants, the Supreme Court outlined a fourth exception, the implied obligation of indemnification. *Id.* at 78. The Court explained that a situation may occur in which A must indemnify fault-free B for the costs of mounting a defense where the fault of A has been imputed to B. *Id.* (also noting that

indemnification requires the primarily liable party to reimburse another who has discharged a liability for which that other is only secondarily liable). The Court concluded that the indemnification exception did not apply in *Krazny-Kaplan* because the jury found that neither the manufacturer nor the distributor was liable to the plaintiff. *Id.* (distinguishing cases that allowed a retailer to be indemnified for his own attorney fees where the manufacturer's product was found to be defective). *Id.*

**{¶14}** The trial court ruled that B&B is barred by the American rule from seeking attorney fees it paid to Gilmour. OJA urges that B&B contracted with Gilmour to pay attorney fees if issues arose under that contract but did not enter a fee-shifting contract with OJA. OJA relies on the statement that, without a contractual fee-shifting agreement, attorney fees are the cost of doing business. *See id.* at 79. OJA also insists that an Eighth District case is directly on point here and should be applied against B&B. *See Doyle v. Fisher Foods, Inc.*, 8th Dist. No. 43701 (Mar. 18, 1982). As to the latter argument, B&B contends that, if application of the American rule even arises here, the indemnification exception would allow its claim for attorney fees.

**{¶15}** Initially, we point out that, contrary to OJA's contention, *Doyle* is not persuasive or applicable. The *Doyle* court refused to create an indemnification exception to the American rule so that a distributor could seek reimbursement from the manufacturer where the distributor incurred attorney fees in defending itself in the suit where the manufacturer was the negligent party. Thereafter, the Supreme Court listed this type of indemnification as an exception to the American rule. *Krasny-Kaplan*, 66 Ohio St.3d at 77 (but found that it did not apply in that case due to the fact that the manufacturer had been found non-negligent). Thus, *Doyle* has been abrogated.

**{¶16}** Moreover, the topic in *Doyle* was whether the secondarily liable party can recover *its own attorney fees* incurred in defending the action. Our case deals with the secondarily liable party paying *a third party's* attorney fees. This is also why our case would not fall under the *Krasny-Kaplan* indemnification exception (if the American Rule and its exceptions were even applicable here). *Krasny-Kaplan* dealt only with the requirements for one defendant's *recovery of its own attorney fees* from

the primarily liable co-defendant. It would be more applicable to B&B's initial attempt to recover some of the attorney fees B&B expended on its own defense of Gilmour's claim. However, as aforementioned, B&B withdrew its request for indemnification of its own attorney fees spent defending the Gilmour claim because its insurance carrier reimbursed it for those fees. (Tr. 39-40). As *Krasny-Kaplan* specifically refers to the costs of mounting *one's own defense*, the case is not directly on point here.

**{¶17}** Regardless, as B&B alternatively argues, the American Rule concerning attorney fees and its accompanying exceptions are irrelevant here. The Rule specifies that each party shall pay *their own attorney fees*, but B&B is seeking reimbursement for its payment of a third party's attorney fees. B&B is not seeking to have OJA pay for B&B's own attorney fees.

**{¶18}** Consequently, the answer to this assignment of error simply revolves around basic tort law damage and indemnification principles. This is not an attorney fees issue. This is a damage issue. B&B incurred its own damages as a result of OJA's negligence. That a portion of those compensatory damages can (for clarification purposes) be labeled, "money paid to Gilmour for Gilmour's attorney fees" does not make those damages "attorney fees" for purposes of the particular case at issue. In other words, a portion of the money B&B paid to Gilmour may have been for Gilmour's attorney fees at one point, but, between B&B and OJA, it is now merely another element of the damages suffered by B&B as a proximate result of OJA's professional negligence.

**{¶19}** Accordingly, this assignment of error has merit. The trial court's decision granting OJA's motion for partial judgment on the pleadings as to Gilmour's attorney fees is reversed and this portion of the case is remanded for further proceedings on this component of damages only.

**{¶20}** Anticipating such a decision, OJA presents an alternative argument in their response brief. OJA claims that any error of the trial court in holding that B&B cannot be indemnified for the attorney fees it paid to Gilmour was harmless because B&B proffered no evidence on attorney fees and failed to disclose an expert who would testify to the reasonableness of the fees.

**{¶21}** As this issue was presented before trial started and as the trial court granted OJA's motion for judgment on the pleadings as to this component of damages, it is unknown how this issue would have played out during trial. Once the court ruled for OJA, B&B was precluded from presenting any evidence on the existence of the portion of its damages representing its payment of Gilmour's attorney fees. Thus, this argument is not ripe for review.

**{¶22}** We also note that B&B did disclose that Attorney Garea would testify regarding his representation of B&B in connection with arbitration, the settlement of the arbitration, and his attorney fees in that matter. Merely because the pretrial statement did not specifically state that this attorney could also testify to other matters, including Gilmour's attorney fees, does not mean that the trial court would have barred him from testifying on that subject. For these reasons, OJA's alternative argument is overruled.

<u>B&B's ASSIGNMENT OF ERROR NUMBER TWO</u>

**{¶23}** B&B's second assignment of error provides:

**{¶24}** "THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT RULED THAT B&B'S CLAIM FOR BREACH OF CONTRACT COULD NOT COEXIST WITH ITS CLAIM FOR PROFESSIONAL NEGLIGENCE."

**{¶25}** OJA moved for directed verdict on B&B's breach of contract claim. OJA argued that although there was a written agreement that was alleged to have been breached, the claim for breach of contract was duplicative of the professional negligence claim as all allegations dealt with breach of the standard of care for an architect. (Tr. 628, 634). B&B had two main factual complaints set forth in both the breach of contract claim and the professional negligence claim: (1) negligent design and (2) failure to coordinate with other trades, specifically a failure to review the mechanical drawings to make sure they worked with OJA's design of the partition walls. (Tr. 630, 632, 633).

**{¶26}** B&B acknowledged that its breach of contract claim for negligent design could be merged with its professional negligence claim. (Tr. 632). However, B&B urged that because OJA's duty to coordinate with other trades was a specific term of

the contract, that particular breach of contract would not merge with the professional negligence cause of action.

**{¶27}** The trial court noted that B&B's case showed that architects have a duty to coordinate regardless of the contract. (Tr. 632). B&B agreed that the duty to coordinate was part of an architect's standard of care. (Tr. 634). Still, B&B did not want the breach of contract claim to merge with the professional negligence claim because OJA planned to present a contributory negligence defense in the tort action which would not constitute a defense in the contract action. (Tr. 632-635).

**{¶28}** The trial court concluded that "the duty of coordination is part and parcel of professional duties as an architect" and thus the claims would merge as there was nothing extra or specific involved in this contract that would not already be covered by the professional standard of care for architects. (Tr. 637-638). On this basis, the court granted OJA's motion and eliminated the contract claim. (Tr. 638).

**{¶29}** On appeal, B&B first argues that the breach of the obligation to coordinate with other disciplines is different than a breach of the architectural duty of care. However, B&B admitted below that the standard of care encompassed this obligation to coordinate. Therefore, B&B cannot now argue the opposite. (Tr. 634). B&B also essentially admitted that merger of claims is permissible in certain situations as it agreed that the negligent design portion of the breach of contract cause of action merged with professional negligence cause of action. Thus, B&B's main argument here is that a breach of contract action for failure to coordinate can be maintained even if the contract does not impose an obligation different than the professional standard of care for architects.

**{¶30}** Before reaching this argument, we address OJA's contention that any error in eliminating the breach of contract claim would be harmless because B&B pointed to no damages that arose separately from the breach of contract. *See Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App.3d 137, 151, 684 N.E.2d 1261 (8th Dist.2005) (even if a duty independent of contract exists, an action arising out of a contract which is also based on tortious conduct must include damages attributable to the tortfeasor in addition to those attributable to the breach of contract).

**{¶31}** B&B explained below that the breach of contract claim would not be susceptible to OJA's defense that others were negligent as the tort claim would be. Since the jury ruled against OJA on that defense, the concern previously expressed by B&B would now be moot. However, as B&B points out, had their contract claim succeeded, they would have automatically received prejudgment interest. *See* R.C. 1343.03(A); *Royal Elec. Constr. Corp. v. Ohio State Univ.*, 73 Ohio St.3d 110, 116, 652 N.E.2d 687 (1995). Whereas, B&B currently has to prove that OJA failed to make a good faith effort to settle in order recover prejudgment interest (on its stayed motion that is pending before the trial court). *See* R.C. 1343.03(C). Consequently, if the trial court erred in eliminating B&B's contract claim, the error would not be considered harmless.

**{¶32}** We thus proceed with the arguments presented on whether the trial court erred in eliminating the contract claim from the jury's consideration. B&B reviews cases that successfully proceeded on contract claims against architects. *See First Natl. Bank of Akron v. Cann*, 503 F.Supp. 419 (N.D.Ohio 1980) (where court found plaintiff failed to prove professional negligence but did prove breach of contract against architect); *South Union Ltd. v. George Parker & Assocs., AIA, Inc.*, 29 Ohio App.3d 197, 504 N.E.2d 1131 (10th Dist.1985) (architect liable for breach of contractual duties); *Elizabeth Gamble v. Turner Constr. Co.*, 14 Ohio App.3d 281, 470 N.E.2d 950 (1st Dist.1984) (tort claim was barred by statute but contract claim was not). Although these cases show that suits do often proceed on alternative theories, these cases do not directly answer the question of whether a court errs in eliminating a contract claim because it is based upon the same facts as a professional negligence claim.

**{¶33}** In support of its contention that a tort claim and a contract claim based upon the same set of facts cannot coexist, OJA cites two Eighth District cases which held that a contract claim precludes the presentation of a tort claim on the same facts unless the tort claim would exist even if no contract existed. *See Jain v. Omni Publishing, Inc.*, 8th Dist. No. 92121, 2009-Ohio-5221, ¶ 27; *Textron*, 115 Ohio App.3d at 151. But, this law does not support OJA.

**{¶34}** These cases stand for the basic principle that merely because there is a breach of contract does not mean that a tort has been committed. *See Jain*, 8th Dist. No. 92121 at ¶ 27; *Textron*, 115 Ohio App.3d at 151. They then provide that a tort claim can coexist if the defendant "breaches a duty owed separately from the duty created by the contract, that is, a duty owed even if no contract existed." *Id. See also Evans Landscaping, Inc. v. Stenger,* 1st Dist. No. C-110104, 2011-Ohio-6033, ¶ 16; *Gold Craft v. Ebert's Contracting & Remodeling, LLC*, 10th Dist. No. 09AP-448, 2010-Ohio-3741, ¶ 21. As B&B points out, it is undisputed that the architect's professional duties existed even if there had been no contract. And, these cases involve the barring of a tort action, not the barring of a contract action (which was the case here).

**{¶35}** OJA continues by urging that architectural negligence, in the absence of a special agreement outlining duties different than those already existing, is a tort claim, citing *Crowninshield v. Old Town Apts., LTD.*, 1st Dist. Nos. C-940731, C-940748 (Apr. 17, 1996). In that case, the complaint alleged that the defendant breached contractual obligations and warranties when designing a building renovation. The trial court concluded that the contract claim was actually a tort claim (barred by the shorter statute of limitations for torts).

**{¶36}** The appellate court stated that an architect is not liable for unsatisfactory results unless there was a failure to exercise reasonable care and skill or "a special agreement." *Id.* As the architectural contract only generally required the architect to design the project and did not contain special provisions which gave rise to express or implied warranties of workmanship, the court refused to find an implied contractual warranty of workmanship. *Id.* The court concluded that the gist of the claims asserted against the architect sounded in tort, as the underlying nature of the claims alleged negligent design. *Id.* (finding the cause of action to be time-barred).

**{¶37}** B&B states that cases characterizing a claim as tort or contract for purposes of a statute of limitations are not relevant when no statute of limitations issue exists. B&B alternatively states that *Crowninshield* supports its position, rather than OJA's position, because the contract here does contain an express promise: to coordinate with other engineering disciplines. OJA responds by reiterating that the

contractual promise to coordinate was admitted to be part of the standard of care for architects and thus is not separately actionable, comparing the situation to that of malpractice.

**{¶38}** An action against one's attorney for damages resulting from the manner of representation is an action for malpractice regardless of whether based upon contract or tort or whether for indemnification or for direct damages. *Pierson v. Rion*, 2d Dist. No. CA23498, 2010-Ohio-1793, ¶ 14. Hence, when the gist of a complaint is malpractice, other duplicative claims are subsumed in the malpractice claim and the court can construe the complaint as only presenting a malpractice claim. *Estate v. Barney v. Manning*, 8th Dist. No.94947, 2011-Ohio-480, fn.2 (breach of fiduciary duty and negligence claims are embodied in and thus subsumed within their legal malpractice claim); *Illinois Natl. Ins. Co. v. Wiles, Boyle, Burkholder & Bringardner Co., L.P.A.*, 10th Dist. No. 10AP-290, 2010-Ohio-5872, ¶ 15-17; *Pierson*, 2d Dist. No. CA23498 at ¶ 13-14; *Knepler v. Cowden*, 2d Dist. No. 17473 (Dec. 23, 1999) (trial court properly removed breach of contract claim from jury because claim sounded in professional negligence rather than contract as all acts were medical malpractice).

**{¶39}** Accordingly, a separate claim for a contract can only proceed where the alleged conduct to support that claim is distinct from the conduct underlying the malpractice claim. *Illinois Natl.*, 10th Dist. No. 10AP-290 at ¶ 17 (breach of contract and breach of fiduciary duty claims were subsumed within its legal malpractice claim because no conduct occurred except that which already constituted the malpractice claim). *Pierson*, 2d Dist. No. CA23498 at ¶ 14 (claims for fraud, breach of contract, and misrepresentation were not founded upon conduct distinct from that supporting legal malpractice claim but rather were duplicative claims concerning same omissions).

**{¶40}** As discussed at oral argument, this leaves the court with two options. Our first option would be to rule in favor of OJA by extending the above malpractice premises to professional negligence claims so that where a breach of contract is also a breach of the standard of care, the contract claim is subsumed by the professional negligence action unless there is distinct conduct to support the contract claim that is not used to support the negligence claim. This was the option essentially chosen by

the trial court when it stated that *if* the contract contained specific obligations that were not part of the standard of care for architects, then the contract claim could remain as the acts or omissions used to support the contract claim would be distinct from the acts or omissions used to support the professional negligence claim. This option would entail a holding that, although there was a specific contract claim said to be violated, the conduct utilized to support the professional negligence claim was not different than the conduct used to support the breach of contract claim.

**{¶41}** Our other option would be to point out that the cases ruling that contract claims are subsumed by a malpractice claim all deal with legal or medical malpractice. For purposes of the one-year malpractice statute of limitations, the common law definition of malpractice pertains only to legal and medical negligence, not other types of professional negligence. *Hocking Conservancy Dist. v. Dodson-Lindblom Assoc.*, 62 Ohio St.2d 195, 198, 404 N.E.2d 164 (1980) (professional engineer is not considered to have committed "malpractice"); *Richardson v. Doe* (1964), 176 Ohio St. 370, 372, 199 N.E.2d 878. This option would entail a refusal to extend the rule that a contract claim is subsumed by a malpractice claim and thus a refusal to create a new rule that a contract claim is subsumed by a professional negligence claim. B&B would have us conclude that, except for this particular rule in medical and legal malpractice cases, a plaintiff can generally set forth whatever theories of legal recovery that he has against a defendant because, although he cannot recover duplicative damages, the case can proceed on both contract and tort theories. *See D.A.N. Joint Venture III LP v. Med X-S Solutions, Inc.*, 11th Dist. No. 2011-L-056, 2012-Ohio-980 (noting that duplicative damages are prohibited but recognizing that a plaintiff can have separate and independent causes of action in tort and contract).

**{¶42}** However, if we were to rule in favor of B&B on this issue, we would end up reversing and remanding for a new trial on the entire case. As can be seen from the above analysis, the tort and contract claims are extremely intertwined, and thus, we would not be comfortable remanding for a new trial on only the contract claim.[1]

---

[1]The appellate court has discretion to determine the scope of the remand. *State ex rel. Smith v. O'Connor*, 71 Ohio St.3d 660, 662, 646 N.E.2d 1115 (1995) (court of appeals is not required to

When advised of this result at oral argument, B&B effectively withdrew this assignment of error from our consideration as they did not wish to risk losing the tort judgment they already possess. As such, we proceed no further on this matter and leave intact the trial court's judgment precluding the breach of contract claim.

### OJA'S FIRST ASSIGNMENT OF ERROR IN THE CROSS-APPEAL

**{¶43}** OJA's first of four assignments of error set forth in its cross-appeal alleges:

**{¶44}** "THE TRIAL COURT ERRED IN FAILING TO CHARGE THE JURY AND TEST ITS DECISION ON THE NEGLIGENCE OF CERTAIN NON-PARTIES."

**{¶45}** OJA begins by asserting that B&B acknowledged that the following third parties were partially responsible for the mold problems: Northshore Mechanical (who was responsible for mechanical and HVAC), Panzica (who was involved in pouring the floor under the ice rink), and Gilmour Academy. OJA asserts that this acknowledgment can be found in statements made by B&B's counsel, B&B's project manager, and B&B's expert witness. Based upon these alleged acknowledgements, OJA argues that the trial court erred in failing to submit to the jury its proposed jury interrogatories to test the jury's findings on the negligence and liability of these third parties.

**{¶46}** OJA asked for six separate interrogatories asking if the jury found that Gilmour Academy, Panzica, or Northshore Mechanical was negligent and if their negligence was the proximate cause of the damages. *See* Proposed Jury Interrogatories 5-10. If the jury answered yes to all or any of these parties, another proposed interrogatory asked the jury to assign the percentage of negligence of OJA and the other party or parties. *See* Proposed Jury Interrogatory 11. Instead of the proposed six, the court submitted one interrogatory that stated:

**{¶47}** "As part of its defense, OJA claims that others were comparatively negligent. Has OJA proven by a preponderance of the evidence that others were

issue limited remand only on damages and could choose to remand for whole new trial). Where the issues are much intertwined, courts are generally inclined to remand for a new trial in toto rather than just a new trial on the specific issue raised. *See, e.g., World Metals, Inc. v. AGA Gas, Inc.*, 142 Ohio App.3d 283, 290, 755 N.E.2d 434 (2001).

negligent and that such negligence was the proximate cause of damages incurred by B&B." Jury Interrogatory 5.

**{¶48}** The next interrogatory stated, "If you answered yes to number five, please identify each such parties percentage of negligence." It then listed B&B, OJA, and Northshore Mechanical with blanks for the percentages next to each. Jury Interrogatory 6.

**{¶49}** We conclude that Interrogatory 5 was a reasonable substitution for proposed Jury Interrogatories 5-10. It was within the trial court's sound discretion to submit one interrogatory on the negligence and proximate cause of any other entity instead of separate interrogatories on each entity and separate interrogatories on negligence and proximate cause regarding each entity. *See, e.g., Ramage v. Cent. Ohio Emergency Serv., Inc.*, 64 Ohio St.3d 97, 107, 592 N.E.2d 828, ¶3 of syllabus (1992) (discretion to combine redundant interrogatories); *Nolan v. Conseco Health Ins. Co.*, 7th Dist. Nos. 07JE30, 07JE31, 2008-Ohio-3332, ¶ 85. Contrary to OJA's assertion, the trial court did not ignore its request to test whether the jury found that third parties were also negligent and whether that negligent proximately caused the damages at issue.

**{¶50}** OJA believes that the trial court violated R.C. 2307.23, which provides:

**{¶51}** "(A) *In determining the percentage of tortious conduct attributable to a party in a tort action under section 2307.22* or sections 2315.32 to 2315.36 [relevant to the contributory negligence of the plaintiff] of the Revised Code, the court in a nonjury action shall make findings of fact, and *the jury in a jury action shall return a general verdict accompanied by answers to interrogatories, that shall specify* all of the following:

**{¶52}** "(1) The percentage of tortious conduct that proximately caused the injury or loss to person or property or the wrongful death that is attributable to the plaintiff and to each party to the tort action from whom the plaintiff seeks recovery in this action;

**{¶53}** "(2) *The percentage of tortious conduct that proximately caused the injury or loss to person or property or the wrongful death that is attributable to each*

*person from whom the plaintiff does not seek recovery in this action.*" (Emphasis added).

**{¶54}** It is important to note the statutory language establishing the requirements of R.C. 2307.23(A)(2) regarding comparative negligence is effective only when determining the percentage attributable to each person under R.C. 2307.22. This latter section deals with joint and several tort liability. Where a jury has expressly found that no other person was negligent, R.C. 2307.23 is essentially not activated.

**{¶55}** In any event, as aforementioned, the court did provide an interrogatory specifically asking the jury to assign the percentage of liability to B&B, OJA, and Northshore. As such, OJA's appellate arguments regarding Northshore are wholly without merit. Regarding Gilmour and Panzica, the jury answered Interrogatory 5 in the negative, and thus, they never had to reach Interrogatory 6. Accordingly, it was not prejudicial that Gilmour and Panzica were not listed in Interrogatory 6. That is, the jury had already specifically found that no others were negligent or that the negligence of others was not the proximate cause of the damages here. Thus, the presence or absence of certain names on Interrogatory 6 was without effect.

**{¶56}** And, as B&B points out, besides a citation in its statement of facts to the project manager's testimony, OJA fails to cite where in the record B&B "acknowledged" that some negligence should be attributed to Panzica and Gilmour (who was the injured client). *See* OJA's Brief at 1, 10. B&B also notes that OJA presented no evidence on the liability of these other parties. Furthermore, as B&B notes, merely because its project manager originally believed OJA when it claimed that the mechanical trade, the client, and the client's representative were negligent due to an HVAC decision, does not mean that B&B cannot now claim that all of the negligence was that of OJA. (Tr. 338, 345). In other words, after all of the facts and opinions came out during arbitration, B&B was disabused of the OJA-induced notion that other entities besides OJA were at fault. For all of these reasons, this assignment of error is overruled.

<u>OJA'S THIRD ASSIGNMENT OF ERROR IN ITS CROSS-APPEAL</u>

**{¶57}** The third assignment of error presented by OJA will be addressed prior to its second assignment of error as the second assignment deals with a jury interrogatory which is dependent on the merits of an argument presented here. The third assignment contends:

**{¶58}** "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN DENYING THE MOTIONS FOR DIRECTED VERDICT OF DEFENDANT-APPELLEE/CROSS-APPELLANT."

**{¶59}** A motion for directed verdict tests the sufficiency of the evidence at trial, not the weight of such evidence or the credibility of witnesses. *Carter v. R&B Pizza Co., Inc.*, 7th Dist. No. 09JE34, 2010-Ohio-5937, ¶ 13, citing *Strother v. Hutchinson*, 67 Ohio St.2d 282, 284, 423 N.E.2d 467 (1981). A motion for directed verdict can be granted only if the trial court has construed the evidence most strongly in favor of the non-movant and still finds that reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to the non-movant. Civ.R. 50(A)(4).

**{¶60}** OJA divides this assignment of error into three parts. First, OJA contends that the trial court erred in denying the branch of their directed verdict motion which alleged that B&B failed to present expert testimony that the cost to restore the property was reasonable, i.e. that the fees charged by the restorers were not unreasonable. (Tr. 619-620). OJA states that the absence of expert testimony on restoration costs is fatal to a claim for property damage.

**{¶61}** The cases OJA's cites here are not supportive of their position. For instance, in *Hopkins*, the court limited its holding to cases involving future repairs that had not yet been conducted and specifically distinguished its holding from cases where repairs had already been conducted. *Hopkins v. Mason*, 9th Dist. No. 06CA0103-M, 2007-Ohio-4345. And, the unpersuasive trial court case cited by OJA actually relies on an appellate case which notes that evidence of reasonableness is often not required where there is bill for services actually rendered. *Seaboard's Restoration Co., Inc. v. Loyer*, 9th Dist. No. 1179 (Mar. 2, 1983).

**{¶62}** As urged by B&B below, Ohio law does not require expert testimony on all damages involving cost to repair. See *Evans Landscaping, Inc. v. Stenger,* 1st Dist. No. C-110104, 2011-Ohio-6033, ¶ 24. Moreover, the witnesses need not specifically use the word "reasonable" in order to satisfy the plaintiff's burden on damages. *Russell v. Turner*, 12th Dist. No. CA87-08-063 (Feb. 1, 1988), citing *Wagner v. McDaniels*, 9 Ohio St.3d 184, 459 N.E.2d 561 (1984) (requiring one to utter words on whether a fee is reasonable constitutes empty ceremony). B&B alternatively posits that they did provide expert testimony that the repair costs were reasonable. B&B also urges that, since this case involved indemnification as well, it only had to show that its settlement offer to Gilmour was fair and reasonable. As reasonableness is involved either way, we proceed in the analysis regarding whether B&B presented sufficient evidence that the repair costs were reasonable.

**{¶63}** The director of maintenance at Gilmour testified as to his coordination on the mold abatement project, and he introduced paid invoices related to this project, invoices whose payment he approved. (Tr. 385, 404, 423-427). He stated that laboratory results showed that a deep-rooted mold had settled itself in a way that required the removal of drywall. (Tr. 395). He testified that a plan was created by an engineering consultant. (Tr. 397). They then solicited bids from contractors who had done similar work and who had a proven track record. (Tr. 401). He testified that the contractors viewed the site and that some did not end up submitting bids. (Tr. 402).

**{¶64}** As to the first phase of repair involving demolition and mold remediation, he testified that they received bids for $104,527 and $94,000, and they went with the lowest bidder. (Tr. 405, 411). As to the next phase, he testified they accepted a bid for $49,000 for one job, stating that the chosen company was the lowest bidder and had a proven track record. (Tr. 409-410). They accepted the bid from the same company for $143,000 for the main reconstruction. (Tr. 410-411). This company was responsible for electrical relocation, building a metal double stud wall, installing a vapor barrier, insulation, and drywall, and painting. (Tr. 411-412). The director of maintenance also explained the change orders. (Tr. 419-420). Finally, he testified that they have had no complaints about the work done and that the mold has not returned in the six years since the project. (Tr. 421-426).

{¶65} Testimony was then presented by the registered professional engineer whose architectural engineering firm was hired to design and coordinate the repair. His expertise on the matters at hand was established. (Tr. 488). He testified to the facts of the situation and the issues that needed to be corrected and why. (Tr. 488-502). He stated that his firm was paid for the project, that his fees charged were in line with standard rates, and that standard rates are 6-8% of the cost of construction. (Tr. 504). He also testified that his opinions were held by a reasonable degree of scientific certainty as a professional engineer. (Tr. 505-506).

{¶66} An architect, who worked for the architectural engineering firm, was also established as an expert. (Tr. 534). She testified that she agreed with the remediation plan drafted by the engineer and opined that it was the most cost-effective fix for the situation. (Tr. 536, 541). She stated that she was involved in competitively bidding the work in order to solicit the lowest possible bid. (Tr. 541). She answered that her firm had no incentive to solicit high bids as they were paid by the hour. (Tr. 541-542).

{¶67} She identified the bids received. (Tr. 542). She stated that she was satisfied with the bids received and that the low bids were accepted. (Tr. 543). She explained that when the bids are reasonably close together it tends to show the prices are reasonably fair and cover the proper scope of the project. (Tr. 543). This architect reviewed and approved the payment applications and certified that the bills were appropriate to be paid. (Tr. 544). She confirmed that her firm billed Gilmour at their standard rates and that they did not unnecessarily increase costs in any way. (Tr. 545.). Finally, she opined that their fix solved the problem as no mold has been seen in the six years since the repair. (Tr. 545-546).

{¶68} Considering all of this in the light most favorable to B&B, some reasonable person could find that there was sufficient evidence that the bills paid for repairs represented reasonable fees for the services rendered. As such, the trial court properly refused to grant directed verdict on this issue.

{¶69} The second issue presented here is whether the absence of evidence on diminution in value bars a claim for damage to commercial real property. OJA insists that even if there is testimony that the repair costs paid were reasonable, there

must be evidence that the repair costs did not exceed the diminution in value. Thus, OJA contends that B&B was required to present evidence on the fair market value of the ice rink facility immediately before the injury and the fair market value immediately after the injury. OJA relies upon the following rule:

**{¶70}** "If the injury is of a permanent or irreparable nature, the measure of damages is the difference in the market value of the property as a whole, including the improvements thereon, before and after the injury. If the injury is susceptible of repair, the measure of damages is the reasonable cost of restoration, plus reasonable compensation for the loss of the use of the property between the time of the injury and the restoration, unless such cost of restoration exceeds the difference in the market value of the property before and after the injury, in which case the difference in market value becomes the measure." *Ohio Collieries Co. v. Cocke*, 107 Ohio St. 238, 248-249, 140 N.E. 356 (1923) (a residential property case).

**{¶71}** *Ohio Collieries* is no longer good law, but OJA believes that it represented the damage formula for commercial and non-commercial realty and that later law changed the formula only with regards to non-commercial property. In *Martin*, the Supreme Court explained that it had previously excised the diminution in value requirement for proving whether repair costs are reasonable. *Martin v. Design Constr. Servs., Inc.,* 121 Ohio St.3d 66, 2009-Ohio-1, 902 N.E.2d 10, ¶ *19*, citing *Northwestern Ohio Natural Gas Co. v. First Congregational Church of Toledo* (1933), 126 Ohio St. 140, 184 N.E. 512 (1933) (a case that was not residential property but was also not commercial property). The *Martin* Court expressed: "*First Congregational* signaled a shift from a diminution-of-market-value approach to a reasonable-cost-of-repair approach when deciding the measure of compensation for temporary damage to noncommercial real property." *Id.* at ¶ 21. The Court concluded:

**{¶72}** "The rule expressed in *Ohio Collieries*, that damages for temporary injury to property cannot exceed the difference between market value immediately before and after the injury, is limited. In an action based on temporary injury to noncommercial real estate, a plaintiff need not prove diminution in the market value of the property in order to recover the reasonable costs of restoration, but either party

may offer evidence of diminution of the market value of the property as a factor bearing on the reasonableness of the cost of restoration."

{¶73} "While evidence of loss in market value of the property may be relevant, the essential inquiry is whether the damages sought are reasonable. Either party may introduce evidence to support or refute claims of reasonableness, including evidence of the change in market value attributable to the temporary injury. But proof of diminution in value is not a required element of the injured party's case." *Id.* at ¶ 24.

{¶74} OJA recognizes that the Supreme Court has excised the diminution requirement of *Ohio Collieries* but claims that such excision was only relevant to cases involving non-commercial property because the Court specified non-commercial property in proclaiming its rule. However, one could conclude that the reason the *Martin* Court mentioned non-commercial property in its holding was because that was the certified question presented to it. *Id.* at ¶ 1. In fact, the *Martin* Court pointed out that other courts have applied *Ohio Collieries* in the way the Ninth District did in the case the Supreme Court was reversing. *Id.* at ¶ 16. One of the examples the Supreme Court provided was a commercial property case. *Id.*, citing *Shell Oil Co. v. Huttenbauer Land Co.*, 118 Ohio App.3d 714, 722, 693 N.E.2d 1168 (1st Dist.1997) (holding that while the defendant did present evidence of the cost to repair its property, the failure to present any evidence of the fair market value of the property before and after it was damaged by the plaintiff was fatal). (Also note that Westlaw's Keycite program "red flags" the commercial *Shell* case and explains that it was abrogated by the non-commercial *Martin* case).

{¶75} After *Martin*, courts addressing the issue have concluded that there is no reason to *distinguish* between commercial and non-commercial property for purposes of proving that repair costs are reasonable and have thus refused to require diminution in value evidence as a mandatory element of damages for temporary damage to commercial realty. *Northpoint Properties v. Charter One Bank*, 8th Dist. No. 94020, 2011-Ohio-2512, ¶ 31, 37; *Monroe v. Steen*, 9th Dist. No. 24342, 2009–Ohio–5163, ¶ 22-23. *See also Case Leasing & Rental, Inc. v. Ohio Dept. of Natural Resources*, 10th Dist. No. 09AP-498, 2009–Ohio–6573, ¶ 28, 41 (suggesting

*Martin* applies in a case involving temporary damage to a commercial sports complex and that restoration is no longer capped by diminution in value)

**{¶76}** OJA cites a Ninth District case applying the diminution requirement in a commercial property case. *Bohaty v. Centerpointe Plaza Associates Ltd. Partnership*, 9th DIst. No. 3143-M, 2002-*Ohio*-749 (also stating that the only exception to the general damages cap is when real estate is held for non-commercial use, when there are reasons personal to the owner for seeking restoration, and when the diminution in fair market value does not adequately compensate the owner for the harm done). However, the Ninth District case relied upon by OJA is a pre-*Martin* decision.

**{¶77}** The Ninth District has since altered its precedent and has specifically applied *Martin* to commercial realty. *See Monroe*, 9th Dist. No. 24342 at ¶ 22-23. In *Monroe*, the Ninth District announced: "Although *Martin* involved residential property, we find that the concepts enunciated in *Martin* apply equally to injury to commercial property and thus, we cannot discern a meaningful distinction between commercial and residential property that would limit the Supreme Court's holding in *Martin* to residential property." *Id.* at ¶ 22.

**{¶78}** We hereby adopt the Eighth, Ninth, and Tenth District's holdings finding *Martin* applicable to commercial cases so that a plaintiff's failure to present evidence on diminution in value does not destroy its entire case. As the *Martin* court stated, *the defendant* can choose to present evidence on the fair market value prior to the injury and the fair market value after the injury if it believes that such amount is less than the restoration cost and if it believes it would help show that the repair was not reasonable. *Martin*, 121 Ohio St.3d 66 at ¶ 24. The following holding is just as applicable to the case at hand as it would be to damages to a church or other non-commercial land:

**{¶79}** "While evidence of loss in market value of the property may be relevant, the essential inquiry is whether the damages sought are reasonable. Either party may introduce evidence to support or refute claims of reasonableness, including evidence of the change in market value attributable to the temporary injury. But proof of diminution in value is not a required element of the injured party's case." *Id.* at ¶ 25.

**{¶80}** We agree that there is no meaningful distinction between commercial and non-commercial property that would require an ice rink to accept a damage award that would not fix the injury and would require it to maintain its condition of a deep-rooted and proliferating mold but a church or home can be fixed without being required to show evidence of diminution.

**{¶81}** The third argument OJA presents here is that B&B's implied indemnification claim is prohibited, claiming that B&B admitted it was actively negligent. *See Reynolds v. Physicians Ins. Co. of Ohio*, 68 Ohio St.3d 14, 623 N.E.2d 30 (1993) (indemnification applies when secondary party was liable for acts committed *solely* by primarily liable party), citing *Globe Indemnity Co. v. Schmitt*, 142 Ohio St. 595, 603, 53 N.E.2d 790 (1944) (when a person is secondarily liable due to his relationship to the other party, and is compelled to pay damages to an injured party, he may recoup his loss for the entire amount of damages paid *from the one who is actually at fault, and who, in fact, caused the injuries*); *Mahathiraj v. Columbia Gas of Ohio, Inc.*, 84 Ohio App.3d 554, 565, 617 N.E.2d 737 (10th Dist.1992) (thus, where a party is actively negligent, they have no right of indemnity as a matter of law).[2] OJA raised this issue at trial as well. (Tr. 642-643).

**{¶82}** B&B points out that OJA does not argue that damages would not have been permissible on the malpractice claim even without the indemnification claim. In any event, B&B urges that there existed no admission that the minor roof issue was related to the mold damage issue that resulted from design malpractice.

**{¶83}** OJA fails to provide citations to the record on this topic within the argument section as required by appellate rule. *See* App.R. 16(A) ("The appellant shall include in its brief, under the headings and in the order indicated, all of the following: * * * An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on

---

[2]We note that OJA also cites Ohio's Anti-Indemnity Statute as an analogy in support of their claim that indemnification is prohibited where the party seeking indemnification was actively negligent. *See* R.C. 2305.31. As B&B points out, the statute is inapplicable here as it deals with express contracts for indemnification and it involves situations where the promisee is seeking indemnification for its own negligence, which is not the situation here. *See Hopkins v. Babcock & Wilson Co.*, 19 Ohio App.3d 291, 484 N.E.2d 271 (10th Dist.).

which appellant relies."). *See also* App.R. 12(A)(2) ("The court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A).")

**{¶84}** We do notice that OJA's statement of facts cites to the purported admissions of B&B. For instance, OJA states that Gilmour's director of maintenance testified that B&B's project manager acknowledged B&B was responsible for defects at the peak of the building. (Tr. 430-431). The testimony of Gilmour's employee is evidence, but it does not constitute a binding and irrefutable admission on behalf of B&B. Moreover, he did not testify that the issue was related to the mold restoration project.

**{¶85}** OJA then cites to the testimony of the architect involved in Gilmour's repair, who acted as B&B's expert at trial and who acknowledged issues with B&B's performance on the eaves. (Tr. 556). However, the architect testified that the eaves were not related to moisture or mold but involved only air infiltration. (Tr. 556).

**{¶86}** And, as B&B responds, the cited examples were instances of discussions regarding an irrelevant issue with the roof eaves, which was described as a separate issue unrelated to the mold problems caused by OJA's design defects. Contrary to OJA's contention, B&B's attorney did not stipulate that B&B was actively negligent regarding the development of mold. (Tr. 643). In responding to OJA's arguments on this topic at trial, counsel stated that any negligence of B&B regarding roof gables was a distinct matter from OJA's partition wall design defect. Counsel stated that the roof item was a $6,400 issue that is completely separable and not part of the suit. (Tr. 643). Counsel explained this to the jury in opening and closing. (Tr. 125, 863-864).

**{¶87}** The matter raised by OJA here may have created an issue for the jury (who specifically answered that neither B&B itself nor others were negligent or their negligence did not proximately cause the damages at issue), but it did not constitute an admission that B&B was actively negligent as to the claimed damages. Thus, indemnification was not prohibited on this basis. This assignment of error is overruled.

OJA'S SECOND ASSIGNMENT OF ERROR IN ITS CROSS-APPEAL

**{¶88}** The second assignment of error presented by OJA contends:

**{¶89}** "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FAILING TO CHARGE THE JURY AND TEST ITS DECISION ON THE ISSUE OF DIMUNTION IN VALUE OF THE PROPERTY."

**{¶90}** OJA asked the court to provide a jury interrogatory asking the jury what the fair market value of the property was before the injury and another jury interrogatory asking the jury what the fair market value of the property was after the injury. (Tr. 811-813). *See also* Proposed Jury Instructions and Proposed Jury Interrogatories. Additionally, OJA asked for an instruction that the restoration costs are limited by the diminution in value. The court refused. OJA now briefly argues that the failure to place this issue before the jury constituted reversible error.

**{¶91}** This assignment of error is dependent on our resolution of the second part of assignment of error number three. Since diminution in value is not a required element of the plaintiff's case, this assignment is without merit. That is, the court need not instruct that diminution limits the repair costs if this limit is no longer required to prove damages in Ohio. And, the jury interrogatories on fair market value before and after would not be required in this event because OJA apparently did not set forth evidence on this topic. Rather, they were maintaining that the burden was on the plaintiff to set forth diminution in value. For the above reasons, this assignment of error is overruled.

OJA'S FOURTH ASSIGNMENT OF ERROR IN ITS CROSS-APPEAL

**{¶92}** The final argument set forth by OJA is as follows:

**{¶93}** "THE TRIAL COURT ERRED IN FAILING TO PROPERLY INSTRUCT THE JURY REGARDING IMPLIED INDEMNIFICATION."

**{¶94}** In their pretrial filing of proposed jury instructions, OJA sought the following lengthy instruction on indemnity:

**{¶95}** "Indemnity is available only to one who, because of a relationship to another whose acts or omissions give rise to an action, is vicariously or secondarily liable to the person injured as a consequence of those acts or omissions.

{¶96} "The rule of indemnity provides that 'where a person is chargeable with another's wrongful act and pays damages to the injured party as a result thereof, he has a right of indemnity from the person committing the wrongful act, the party paying the damages being only secondarily liable; whereas, the person committing the wrongful act is primarily liable.'  When a person is secondarily liable due to his relationship to the other party, and is compelled to pay damages to an injured party, he may recoup his loss for the entire amount of damages paid from the one who is actually at fault, and who, in fact, caused the injuries.

{¶97} "An implied contract of indemnity should be recognized in situations involving related tortfeasors, where the one committing the wrong is so related to a secondary party as to make the secondary party liable for the wrongs committed solely by the joint or concurrent tortfeasors and are both chargeable with actual negligence.  Absent fault, there is no basis for indemnification under Ohio law since one party must be chargeable for wrongful conduct of another as a prerequisite for indemnity."

{¶98} In charging the jury, the court explained the architect-client relationship, architectural negligence, the standard of care, causation, and other pertinent concepts. On the specific topic of indemnity, the court instructed:

{¶99} "The Plaintiff, B&B, alleges that Defendant, Olsavsky Jaminet Architects, Inc., known as OJA, committed negligence in its design services as a subcontractor, as a result of which and by virtue of contracts between Gilmour and B&B, B&B was held to answer to Gilmour in the amount of restoration costs contested between the parties. Under the legal doctrine known as common law indemnity, B&B is entitled to recoup its financial losses to Gilmour, provided B&B meets its burden of proof both that OJA was negligent, and that such negligence was a direct and proximate cause of the damages sustained by Gilmour and B&B. * * * In order to recover against OJA the Plaintiff must prove by the greater weight of the evidence that OJA was primarily negligent, and that such negligence was a direct and proximate cause of Plaintiff's losses, and that Plaintiff was damaged by this negligence." (Tr. 894-895).

{¶100} On appeal, a party may not assign as error the giving or the failure to give any instruction unless the party objected before the jury retired to consider its verdict, stating specifically the matter objected to and the grounds for the objection. Civ.R. 51(A). OJA did not specifically state on the record what was wrong with the trial court's instruction except to say that their proposed instruction should be provided as it represented a fair and complete statement of Ohio law on common law or implied indemnification. (Tr. 811, 814). OJA briefly claims here that its proposal was a proper statement of the law. OJA does not argue that the trial court's instruction was incorrect, but urges that the trial court's instruction inadequately defined the concept of indemnity.

{¶101} A determination as to which jury instructions are proper is a matter left to the sound discretion of the trial court, and thus, a trial court's formulation of the instructions is upheld absent an abuse of discretion. *State v. Wolons*, 44 Ohio St.3d 64, 68, 541 N.E.2d 443 (1989); *State v. Guster*, 66 Ohio St.2d 266, 271, 421 N.E.2d 157 (1981). In evaluating whether the court acted unreasonably, unconscionably, or arbitrarily, we consider the jury instructions as a whole*. State v. Jalowiec*, 91 Ohio St.3d 220, 231, 744 N.E.2d 163 (2001).

{¶102} As B&B urges, a jury instruction should clearly *and concisely* state the principles of law necessary to enable the jury to evaluate the case. *Cleveland Electric Illuminating Co. v. Astorhuest Land Co.*, 18 Ohio St.3d 268, 272, 480 N.E.2d 794 (1985). The requested instruction was long, repetitive, and not layperson-friendly.

{¶103} Moreover, OJA fails to specify exactly what prejudice was suffered as a result of the instruction given by the trial court. *See, e.g., Smith v. Flesher*, 12 Ohio St.2d 107, 233 N.E.2d 137 (1967). This is especially true where the jury specifically found that OJA was negligent in providing architectural services to B&B on the Gilmour project, that this negligence was a proximate cause of B&B's damages, that B&B itself was not also negligent, and that only OJA's negligence caused the damage as no others were negligent. As such, this assignment of error is overruled.

CONCLUSION

**{¶104}** B&B's first assignment of error is sustained. Thus, the trial court's judgment precluding evidence of the damages B&B suffered as a result of paying Gilmour's attorney fees is reversed, and the case is remanded for further proceedings on this specific component of damages. B&B's second assignment of error has been effectively withdrawn, and thus, no conclusion is reached on the issue of whether the trial court erred in eliminating the contract claim. The four assignments of error contained in OJA's cross-appeal lack merit, and the trial court's decision on these matters is affirmed.

**{¶105}** For the foregoing reasons, the judgment of the trial court is affirmed in part and reversed in part and remanded.

Donofrio, J., concurs.
Waite, P.J., concurs.