[Cite as *Carter v. R&B Pizza Co., Inc.*, 2010-Ohio-5937.]

STATE OF OHIO, JEFFERSON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| BENITA CARTER, | ) | |
| | ) | |
| PLAINTIFF-APPELLANT, | ) | |
| | ) | |
| V. | ) | CASE NO. 09 JE 34 |
| | ) | |
| R&B PIZZA CO., INC., ET AL., | ) | OPINION |
| | ) | |
| DEFENDANTS-APPELLEES. | ) | |

CHARACTER OF PROCEEDINGS:      Civil Appeal from Court of Common
Pleas of Jefferson County, Ohio
Case No. 04CV239

JUDGMENT:      Reversed.      Judgment for Plaintiff-
Appellant.

APPEARANCES:
For Plaintiff-Appellant      Attorney Jack N. Turoff
20320 Farnsleigh Road
Shaker Heights, Ohio 44122

For Defendant-Appellee      Richard Cordray
Ohio Attorney General
Eric Tarbox
Assistant Attorney General
150 East Gay Street, 22nd Flr.
Columbus, Ohio 43215-3130

JUDGES:

Hon. Gene Donofrio
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

Dated: December 6, 2010

DONOFRIO, J.

{¶1} Plaintiff-appellant, Benita Carter, appeals from Jefferson County Common Pleas Court judgments denying her motion for directed verdict and denying her motions for judgment notwithstanding the verdict or for a new trial. A jury verdict was entered in favor of defendant-appellee, the Administrator of the Bureau of Workers' Compensation, finding that appellant was not entitled to workers' compensation benefits.

{¶2} This is the second time this case has been before this court. In *Carter v. R&B Pizza Co., Inc.*, 7th Dist. No. 06-JE-5, 2008-Ohio-1530, at ¶`3-4, we set out the following pertinent facts:

{¶3} "Benita Carter is said to have run R & B Pizza Company, Inc., dba Pizza Express, a business located next to her house in Cadiz, Ohio. She was the vice president, treasurer and secretary, and her husband was the sole stockholder and president. (Tr. 156-157). Her husband also owned Wise Guys Pizza, Inc., dba Speedies Pizza, a business he operated in Midland, Pennsylvania.

{¶4} "In September 2001, Ms. Carter was driving on Route 22 in Jefferson County when a drunk driver entered oncoming traffic and crashed into her vehicle. She filed for Ohio workers' compensation benefits claiming that she had been delivering pizza supplies from the Pennsylvania pizza store to R & B Pizza in Ohio. When her application was denied and the Industrial Commission refused her appeal, she filed a complaint and notice of appeal in the trial court."

{¶5} The case went to trial where the jury returned a verdict in favor of appellee. The trial court granted appellant's motion for a new trial finding that the judgment was not supported by the weight of the evidence because appellant was clearly an employee acting within the scope of her employment when the accident occurred. On appeal, we found that the trial court's decision to grant a new trial was correct, but for reasons other than those put forth by the trial court. We found that the jury was erroneously charged on the definition of "employee," and therefore, the jury's verdict was unreliable. Id. at ¶47.

{¶6} Consequently, this case proceeded to a new trial on June 30, 2009. This time the parties stipulated that appellant was an employee of R&B. Thus, the only issue for the jury was whether appellant was acting in the scope of her employment when the accident occurred. At the close of evidence, appellant moved for a directed verdict. The trial court overruled the motion. Subsequently, the jury returned a verdict in favor of appellee finding that appellant is not entitled to participate in the Ohio Workers' Compensation Fund.

{¶7} Appellant subsequently filed a motion for judgment notwithstanding the verdict (JNOV) or, in the alternative, motion for a new trial. The trial court denied appellant's motions.

{¶8} Appellant filed a timely notice of appeal on September 17, 2009.

{¶9} Appellant raises five assignments of error. Her first and fifth assignments of error are related and therefore, we will address them together. They state, respectively:

{¶10} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO FIND THAT BENITA CARTER WAS ACTING WITHIN THE SCOPE OF HER EMPLOYMENT AS A MATTER OF LAW."

{¶11} "THE TRIAL COURT'S REFUSAL TO GRANT APPELLANT'S MOTION FOR J.N.O.V. OR NEW TRIAL RESULTED IN A GROSS MISCARRIAGE OF JUSTICE BASED ON THE FACTS OF THIS CASE."

{¶12} Appellant argues that, in ruling on her motions for directed verdict and JNOV, the trial court failed to consider the liberal construction of workers' compensation law in favor of finding coverage for the employee. Appellant asserts that there was no evidence to contradict that she was acting within the scope of her employment at the time of the accident. Given the lack of contradictory evidence and the liberal construction of workers' compensation law, appellant argues the court should have granted her motion for directed verdict. She contends that appellee's arguments in rebuttal were focused on weight of the evidence and witness credibility. Instead, appellant argues that the appropriate test was one of sufficiency.

{¶13} A motion for directed verdict tests the sufficiency of the evidence at trial, not the weight of such evidence or the credibility of witnesses. *Northeast Ohio Elite Gymnastics Training Ctr., Inc. v. Osborne*, 183 Ohio App.3d 104, 2009-Ohio-2612, at ¶6, citing *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 284. The court shall grant a motion for a directed verdict when, "after construing the evidence most strongly in favor of the party against whom the motion is directed, [it] finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party." Civ.R. 50(A)(4).

{¶14} When ruling on a motion for JNOV, the trial court applies the same test applied to a motion for a directed verdict. *Boardman Tp. Park Dist. v. Boardman Supply Co.* (Jan. 23, 2001), 7th Dist. No. 99-CA-297. In ruling on a JNOV motion, courts do not consider the weight of the evidence or witness credibility, but simply consider whether sufficient evidence exists to support the verdict. *Wells Fargo Financial Leasing Inc. v. Gilliland,* 4th Dist. Nos. 05CA2993, 05CA3006, 2006-Ohio-2756, at ¶28. If substantial competent evidence supports the non-moving party, and reasonable minds could reach different conclusions about that evidence, the court must deny the motion. Id. at ¶ 27.

{¶15} An appellate court reviews a trial court's rulings on motions for directed verdict and for JNOV de novo because they present questions of law. *Peam v. Daimler Chrysler Corp.* (2002), 148 Ohio App.3d 228, 240; *Julian v. Creekside Health Center,* 7th Dist. No. 03-MA-21, 2004-Ohio-3197, at ¶8.

{¶16} We must examine the relevant evidence presented at trial to determine whether the trial court properly denied appellant's motions for directed verdict and JNOV.

{¶17} Ronald Carter, appellant's ex-husband, testified that he owned two pizza shops, R&B Pizza Express in Cadiz, Ohio and Speedies Pizza in Pennsylvania. (Tr. 108). He testified that he ran the Pennsylvania shop and appellant ran the Ohio shop. (Tr. 109-110).

**{¶18}** On the day of the accident, Ronald testified that he and appellant went together to the Pennsylvania shop. (Tr. 112). Ronald stated that appellant accompanied him that day so that she could meet with their bookkeeper. (Tr. 112). He stated that appellant had to go over the monthly bookwork for the Ohio store. (Tr. 112). Ronald stated that appellant travelled to Pennsylvania once a month to meet with the bookkeeper regarding the books for the Ohio store, which she kept track of. (Tr. 112-13). Additionally, Ronald stated that appellant had to pick up pizza supplies for the Ohio store. (Tr. 113). This was something that she did two or three times a week. (Tr. 113).

**{¶19}** Although appellant was scheduled to meet the bookkeeper that day, Ronald testified the bookkeeper never showed up. (Tr. 116). He stated that the bookkeeper frequently stood them up. (Tr. 116). While appellant was waiting on the bookkeeper, Ronald stated that he went to a bar up the street to help them fix some equipment. (Tr. 116-17). He stayed at the bar for a few hours and had a few drinks. (Tr. 118-20).

**{¶20}** Ronald also testified about the pizza supplies. He identified a bill for the pizza supplies for the Ohio store dated the day of the accident. (Tr. 120-21, Ex. 5). These supplies were in appellant's car at the time of the accident. (Tr. 121). The supplies included: pizza sauce, flour, salad oil, cheese, pepperoni, wings, beef slices, breast fillets, sausage, yeast, meatballs, bacon crumbles, anchovies, and foil. (Ex. 5). He stated that he and appellant were taking the supplies to the Ohio store that night because some of them were perishable and needed to be refrigerated right away. (Tr. 123-24, 137). He also identified a picture of appellant's vehicle taken after the crash depicting the contents of the vehicle, including many of the supplies. (Tr. 124; Ex. 1).

**{¶21}** Appellant's and Ronald's son, Ronald Carter Jr., also testified. He stated that he worked in both pizza shops for some time. (Tr. 144). He testified that his mother ran the Ohio pizza shop while his father ran the Pennsylvania shop. (Tr.

144). Ronald Jr. stated that he saw his mother work at the Pennsylvania shop a few times. (Tr. 145).

**{¶22}** Finally, appellant testified. Like Ronald, she testified that Ronald owned both pizza shops, that she ran the Ohio shop, and that he ran the Pennsylvania shop. (Tr. 162-64). Appellant stated that she usually had two employees. (Tr. 164). In 2001, however, she stated that the Ohio store was suffering financially and she could no longer afford help. (Tr. 165). She stated too that she started buying her supplies from Pennsylvania because the Pennsylvania store was doing well and she could buy supplies on credit there. (Tr. 165-66). She stated that she usually went to Pennsylvania twice a week to pick up supplies. (Tr. 167, 171). Additionally, appellant testified that she went to Pennsylvania approximately once a month to meet with the bookkeeper. (Tr. 167-68, 171). She stated that she frequently had to wait for the bookkeeper to show up and sometimes, the bookkeeper failed to keep their appointments. (Tr. 168).

**{¶23}** As to the day of the accident, appellant testified that she and Ronald left Ohio a little after 2:00 p.m. (Tr. 172). She stated that the purpose of her trip was twofold: she was going to meet with the bookkeeper and she was going to pick up supplies for the Ohio store. (Tr. 173).

**{¶24}** Upon arriving in Pennsylvania, appellant testified that the bookkeeper never showed up. (Tr. 174). Appellant testified that this was not unusual as the bookkeeper frequently missed their appointment. (Tr. 174). Appellant stated that she waited at the Pennsylvania shop for the bookkeeper. (Tr. 174). Appellant stated that the only time she did any work in the Pennsylvania shop was if she was there waiting on supplies for the Ohio store or for the bookkeeper and the employees needed help answering the phone or taking an order. (Tr. 175).

**{¶25}** While she waited at the Pennsylvania shop, appellant stated that Ronald went to help the owner of the bar down the street fix some equipment. (Tr. 176). While she waited, she made calls to the Ohio shop to see if they were running low on any supplies and if they needed them right away and made calls to the

bookkeeper to see if she was coming. (Tr. 177). Appellant stated that the supplies for the Ohio store were delivered around 6:00 p.m. and Ronald returned around 10:00 p.m. (Tr. 177-78). She testified that the two of them loaded up her vehicle with the supplies and she began to drive home. (Tr. 178). Included in the supplies, appellant stated, were chicken wings, pizza sauce, cheese, flour, pepperoni, sausage, buns, and tomatoes. (Tr. 178-79). Some of these items were perishable so appellant intended to put them away as soon as they got back to Ohio. (Tr. 179).

{¶26} Appellant stated that the only reason she ever went to Pennsylvania was for business purposes. (Tr. 184).

{¶27} On cross examination, appellant stated that she never worked in the Pennsylvania store. (Tr. 185). And she testified that the bookkeeper became unreliable when her husband became ill in the past year. (Tr. 185-86). She stated that on the day of the accident, while she was in Pennsylvania, her son's friend was running the Ohio shop. (Tr. 187). But she then stated she was unsure whether he was there that night or not. (Tr. 188).

{¶28} Because appellee conceded that appellant was an employee, the only issue in this case was whether appellant was within the scope of her employment when the accident occurred. Generally, scope of employment questions are questions of fact for the jury to determine. *Osborne v. Lyles* (1992), 63 Ohio St.3d 326, 330. However, when reasonable minds can come to only one conclusion, scope of employment becomes an issue of law. Id. To determine the issue as a matter of law, the material facts must be undisputed. Id.

{¶29} In this case, the uncontroverted evidence demonstrated that appellant was within the scope of her employment when the accident occurred. The following facts are undisputed.

{¶30} Appellant and Ronald left Ohio shortly after 2:00 p.m. and drove to the Pennsylvania shop. Appellant's purposes in making this trip were (1) to meet with the bookkeeper regarding the Ohio shop's monthly accounting and (2) to pick up supplies for the Ohio shop. As part of running the Ohio shop, appellant travelled to

Pennsylvania at least once a month to meet with the bookkeeper and at least twice a week to pick up supplies.

{¶31} The bookkeeper never showed up, however, this was not unusual. While waiting on her husband to return to the shop, appellant made calls to the bookkeeper to see if she was coming and also to the Ohio shop to see if they needed the supplies immediately. The supplies were delivered to the Pennsylvania shop around 6:00 p.m. Sometime after 10:00 p.m., Ronald returned to the Pennsylvania shop and he helped appellant load the supplies into her vehicle. Appellant's vehicle was loaded with pizza sauce, pepperoni, chicken wings, flour, cheese, and various other pizza-shop supplies. Appellant was driving and was going directly to the Ohio shop to refrigerate the perishable supplies. While en route, the accident occurred.

{¶32} Appellee did not contradict these critical facts. It only attempted to call appellant's credibility into question by raising questions as to whether anyone was running the Ohio shop while she was gone, whether she ever worked in the Pennsylvania shop, and why appellant was using a bookkeeper on whom she could not rely. None of this testimony challenged the above established facts.

{¶33} The evidence in this case was not complicated. There simply was not sufficient evidence to support the jury's verdict. Even when construing the evidence in the light most favorable to appellee, reasonable minds could only conclude that appellant was within the scope of her employment. Thus, the trial court should have granted appellant either a directed verdict or a JNOV. Accordingly, appellant's first and fifth assignments of error have merit.

{¶34} Appellant's second, third, and fourth assignments of error state, respectively:

{¶35} "AS A MATTER OF LAW, THE BUREAU OF WORKERS COMPENSATION SHOULD HAVE BEEN ESTOPPED FROM DENYING THAT BENITA CARTER WAS NOT ACTING WITHIN THE SCOPE OF EMPLOYMENT."

{¶36} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT UNREASONABLY EXCLUDED THE AMENDED POLICE REPORT WHICH

FURTHER DETAILS THE CONTENTS OF BENITA CARTER'S VEHICLE AT THE TIME OF THE ACCIDENT."

**{¶37}** "THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT UNREASONABLY EXCLUDED RONALD CARTER'S TESTIMONY THAT HIS OWN WORKERS' COMPENSATION CLAIM FOR THE EXACT SAME ACCIDENT WAS GRANTED."

**{¶38}** Given our resolution of appellant's first and fifth assignments of error, her second, third, and fourth assignments of error are moot.

**{¶39}** For the reasons stated above, the trial court's judgment is hereby reversed and judgment is entered in favor of appellant. Appellant is entitled to participate in the Ohio Workers' Compensation Fund.

Waite, J., concurs.

DeGenaro, J., concurs.