[Cite as *Roghelia v. Hopedale Mining, L.L.C.*, 2014-Ohio-2935.]

STATE OF OHIO, HARRISON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| RICHARD ROGHELIA, | ) | |
| | ) | CASE NO.  13 HA 8 |
| PLAINTIFF-APPELLANT, | ) | |
| | ) | |
| VS. | ) | O P I N I O N |
| | ) | |
| HOPEDALE MINING, LLC, | ) | |
| | ) | |
| DEFENDANT-APPELLEE. | ) | |

CHARACTER OF PROCEEDINGS:    Civil Appeal from Common Pleas Court,
                             Case No. CVH-2009-0055.

JUDGMENT:                    Reversed and Remanded.

APPEARANCES:
For Plaintiff-Appellant:     Attorney Patrick Cassidy
                             Attorney Timothy Cogan
                             The First State Capitol
                             1413 Eoff Street
                             Wheeling, West Virginia  26003-3582


For Defendant-Appellee:      Attorney Erik Schramm
                             46457 National Road West
                             St. Clairsville, Ohio  43950


JUDGES:
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

                             Dated:  June 23, 2014

VUKOVICH, J.

**{¶1}** Plaintiff-appellant Rick Roghelia appeals from the decision of the Harrison County Common Pleas Court granting defendant-appellee Hopedale Mining, LLC's motion for directed verdict. Three assignments of error are raised in this appeal. Under the first assignment of error, Roghelia argues that the trial court erred in finding as a matter of law that Roghelia was not perceived as disabled. In his second assignment of error, he asserts that the trial court erred when it indicated that the fact that the employer accommodated Roghelia meant that it did not perceive him as disabled. In his last assignment of error, Roghelia contends that the trial court erred when it concluded that no reasonable jury could find that the reason for terminating Roghelia was based on a perceived disability and could only conclude that Roghelia violated the employer's absenteeism policy.

**{¶2}** Considering the arguments and the facts presented at trial, we hold that the trial court erred in granting Hopedale Mining's motion for a directed verdict. In granting this motion, the trial court used the wrong standard. It found that reasonable minds could only conclude that Hopedale Mining did not perceive Roghelia as being disabled so that his impairment substantially limited a major life activity. This is the incorrect statement of the law. *Scalia v. Aldi, Inc.*, 9th Dist. No. 25346, 2011-Ohio-6596; R.C. 4112.01(A)(13). Roghelia only had to show that the Mine perceived him as disabled; the perception of a disability does not need to be qualified as an impairment that substantially limits a major life activity. *Scalia*; R.C. 4112.01(A)(13). Furthermore, given the evidence presented at trial, whether Roghelia was perceived as disabled was a question for the jury and so was whether his termination was based on that perception or if it was based on his alleged violation of the employer's absenteeism policy. For those reasons, which are more fully explained below, the judgment of the trial court is reversed and the case is remanded for a new trial.

<u>Statement of the Case</u>

**{¶3}** Roghelia was hired by Hopedale Mining in January 2004. On February 27, 2006, while roof bolting, Roghelia amputated his left thumb. Following that accident, Roghelia returned to work. The record shows upon his return he solely

worked as a shuttle car operator from August 23, 2006 to December 6, 2006. At that point, he was moved to an out-by out-by laborer, which encompassed a myriad of jobs. On April 3, 2007, a second surgery was performed on his left hand to help with the pain Roghelia still encountered because of the loss of his thumb. He was off work for two weeks.

**{¶4}** Roghelia was scheduled to work on May 15, 2007. He claims that he called in that day to report off for his entire shift rotation, which would have been four days. On May 22, 2007, after seeing a doctor, he faxed a doctor's excuse that indicated that he would be off until May 28, 2007. He admits that he did not call in any other day to report off.

**{¶5}** On May 24, 2007, Roghelia received a letter advising him that due to his absenteeism, his employment with Hopedale Mining was terminated. On May 26, 2009, Roghelia filed a complaint against Hopedale Mining asserting that it discriminated against him based on his disability or a perceived disability.

**{¶6}** On April 22, 2011, Hopedale Mining moved for summary judgment. Roghelia responded to the summary judgment on May 3, 2011. On June 14, 2013, the motion for summary judgment was denied on the basis that there were genuine issues of material fact.

**{¶7}** The jury trial began on July 20, 2013. Following Roghelia's presentation of his case, Hopedale Mining moved for a directed verdict. The trial court granted the motion. It found that Roghelia had not established that he was disabled and that Hopedale Mining did not regard him as disabled. The court indicated that the evidence established that Roghelia had a cavalier attitude concerning his employer's requirements for reporting off work and providing doctor's excuses. 08/02/13 J.E. Roghelia timely appeals from that decision.

### Standard of Review

**{¶8}** A trial court's decision granting a motion for directed verdict presents a question of law, which an appellate court reviews de novo. *Carter v. R & B Pizza Co., Inc.*, 7th Dist. No. 09JE34, 2010-Ohio-5937, ¶ 15. The applicable standard of review for a directed verdict is set forth in Civ.R. 50(A)(4):

*When granted on the evidence.* When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.

Civ.R. 50.

<u>First Assignment of Error</u>

{¶9} "The court erred in finding as a matter of law that Roghelia was not perceived, or regarded as, disabled."

{¶10} This assignment of error is focused solely on the trial court's determination that there was no evidence that, if believed, would lead to the conclusion that Roghelia was terminated based on a perceived disability.

{¶11} R.C. 4112.02(A) provides that it is an unlawful discriminatory practice for an employer to terminate an employee based on disability. "'Disability' means a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a record of a physical or mental impairment; or being regarded as having a physical or mental impairment." R.C. 4112.01(A)(13).

{¶12} In *McGlone,* the Ohio Supreme Court set forth what was needed to establish a prima facie case of disability discrimination. The party seeking relief must demonstrate (1) that he or she has a disability, "(2) that an adverse employment action was taken by an employer, at least in part, because the individual was [disabled], and (3) that the person, though [disabled], can safely and substantially perform the essential functions of the job in question." *Columbus Civ. Serv. Comm. v. McGlone,* 82 Ohio St.3d 569, 571, 697 N.E.2d 204 (1998). Once an employee establishes a prima facie case of disability discrimination, "the burden then shifts to the employer to set forth some legitimate, nondiscriminatory reason for the action

taken." *Hood v. Diamond Products, Inc.*, 74 Ohio St.3d 298, 658 N.E.2d 738 (1996). If the employer does so, "then the employee * * * must demonstrate that the employer's stated reason was a pretext for impermissible discrimination." *Id.*

{¶13} For our purposes, that rule is slightly modified since we are not dealing with a claimed disability, but rather an alleged perception of a disability. Thus, Roghelia had to show that he was perceived as disabled, that he was terminated based on that perception, and that he could perform the essential functions of the job despite that perception.

{¶14} The first prong of this test is a perceived disability. The parties here consistently state that the test is whether the employer regards or perceives an employee as substantially limited in a major life activity. The trial court also used this test to determine whether to grant the directed verdict. In its judgment entry, it states, "The Court found that in reviewing the evidence relevant to this branch, reasonable minds could only conclude that the employer defendant did not regard Plaintiff as having an impairment which limited or was perceived to limit a major life activity." 08/02/13 J.E.

{¶15} According to the Ninth Appellate District. this is an incorrect statement of the law as to a perceived disability. *Scalia v. Aldi, Inc.*, 9th Dist. No. 25436, 2011-Ohio-6596, ¶24. In 2011, the Ninth Appellate District explained that under a plain reading of R.C. 4112.01(A)(13), a plaintiff must show that the employer regarded her as having a mental or physical impairment, but without regard to whether the employer regarded her as substantially limited in her daily life activities as a result. *Id.* at ¶24. Thus, the perception of a disability does not need to be qualified with impairment of a major life activity. In making this holding, the Ninth Appellate District indicated that pre-2008 federal cases could not be looked at because the federal law at that time as to a perceived disability was different than Ohio law. Thus, federal case law would not provide a guide as to deciding a perceived disability under Ohio law. In reaching this holding, the Ninth Appellate District explained:

> In reliance on *McGlone,* Ohio Courts have continued to reference federal caselaw interpreting the ADA with respect to claims

alleging perceived disability discrimination under R.C. 4112.02. Consequently, when the United States Supreme Court held that the ADA prohibited discrimination when "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities," *Sutton v. United Air Lines, Inc.* (1999), 527 U.S. 471, 489, 119 S.Ct. 2139, 144 L.Ed.2d 450, Ohio Courts of appeals applied the same standard to claims for perceived disability arising under R.C. 4112.02. See, e.g., *Hershberger v. Altercare, Inc.,* 5th Dist. No. 2006CA00167, 2007–Ohio–1452, at ¶ 58; *Hart v. Columbus Dispatch/Dispatch Printing Co.,* 10th Dist. No. 02AP–506, 2002–Ohio–6963, at ¶ 30.

We are not convinced, however, that this analysis is accurate because the federal statute and the Ohio statute at issue in those cases were inconsistent. In *Genaro v. Cent. Transport* (1999), 84 Ohio St.3d 293, 703 N.E.2d 782, the Ohio Supreme Court refined its earlier position regarding the use of federal law to interpret R.C. 4112.02. Specifically, the Court concluded that federal materials could not be used in every situation under R.C. Chapter 4112, but only when the terms of the federal statute are consistent with Ohio law or when R.C. Chapter 4112 leaves a term undefined. *Id.* at 298, 703 N.E.2d 782.

While the Supreme Court's statements in *McGlone* are consistent with *Genaro* because the version of R.C. Chapter 4112 considered in *McGlone* did not define "regarded as" disability discrimination, R.C. 4112.01(A)(13) has since been amended. It now defines a disability, in part, as "a physical or mental impairment that substantially limits one or more major life activities * * * or being regarded as having a physical or mental impairment." At the time of Ms. Scalia's employment, the ADA, on the other hand, defined disability, in

part, as "a physical or mental impairment that substantially limits one or more major life activities of such individual * * * [or] being regarded as having *such an impairment.*" (Emphasis added.) Section 12102(2)(C), Title 42, U.S.Code. The definition of disability under the ADA was therefore similar, but with one significant difference: the inclusion of the word "such" had the effect of defining perceived disability as being regarded as having an impairment that substantially limits one or more major life activities. See *Sutton,* 527 U.S. at 489, quoting Section 12102(2)(C), Title 42, U.S.Code. ("Under subsection (C), individuals who are 'regarded as' having a disability are disabled within the meaning of the ADA. See § 12102(2)(C). Subsection (C) of this version of the statute provides that having a disability includes 'being regarded as having,' § 12102(2)(C), 'a physical or mental impairment that substantially limits one or more of the major life activities of such individual,' § 12102(2)(A).") In contrast, under a plain reading of R.C. 4112.01(A)(13), a plaintiff must show that the employer regarded her as having a mental or physical impairment, but without regard to whether the employer regarded her as substantially limited in her daily life activities as a result.

Because the plain language of the definition of disability contained in R.C. 4112.01 differs in substance from the ADA [federal law], it is not appropriate to look to federal materials interpreting the pre–2008 ADA with respect to perceived disability claims under Ohio law. See, generally, *Genaro,* 84 Ohio St.3d at 297–98, 703 N.E.2d 782. Consequently, Ms. Scalia need not demonstrate that Aldi perceived her as being substantially limited in a major life activity, but that it perceived her as having "a physical or mental impairment[ ]" as defined by Ohio law. R.C. 4112.01(A)(13). To the extent that the trial court required Ms. Scalia to demonstrate that Aldi perceived her as having an impairment

that substantially limited a major life activity, therefore, its decision was in error.

*Scalia v. Aldi, Inc.*, 9th Dist. No. 25436, 2011-Ohio-6596, ¶ 22-25.

**{¶16}** We find this reasoning to be persuasive and applicable. In *Scalia*, the employee was terminated prior to 2008, which is the same as Roghelia.

**{¶17}** Furthermore, it also noted that in 2008, partly in response to the *Sutton* decision, the ADA was amended and the definition of "disability" now conforms with the current version of R.C. 4112.01(A)(13)'s definition of a perceived disability. The ADA currently states, "An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. 12102(3)(A)

**{¶18}** Consequently, based on the above, we hold that the test for a perceived disability is not whether the disability is perceived to limit a major life activity, but rather whether there is a perception of the disability. Therefore, the trial court erred in using the incorrect test.

**{¶19}** That said, application of the wrong test does not necessarily mean that a directed verdict should not have been granted. Thus, we will review the evidence using the correct standard to determine whether reasonable minds could or could not find that Hopedale Mining perceived Roghelia as disabled. If when viewing the evidence in the light most favorable to Roghelia, using the correct standard for perceived disability, we find that reasonable minds could not find that Roghelia was perceived as disabled, then the directed verdict could be affirmed.

**{¶20}** Prior to discussing the testimony, it is noted that there was discussion at trial as to whether Roghelia was an "out-by laborer" or whether he was an "out-by out-by laborer." This was discussed because each position has different jobs. Hopedale Mining claimed he was an out-by out-by laborer, while Roghelia stated he was an out-by laborer. However, when shown the job description for an out-by out-by laborer, Roghelia testified that what he called an out-by laborer met the

description of what Hopedale Mining called an out-by out-by laborer position.  Tr. 222.

> Q.  And that was a different job you're calling out-by but people get confused because the mine had two different out-by job descriptions.
>
> A.  Yes, they had section out-by and then an out-by.
>
> Q.  Okay.  And that's the job description that says for an out-by out-by laborer.  Would you look at it and see if that's the job you did?
>
> A.  Yes, I did do these jobs.
>
> Q.  Alright.  You think that adequately describes the job that you performed as what I'm calling out-by out-by laborer and some people have called just an out-by laborer?
>
> A.  Yes.

Tr. 222.

**{¶21}** Thus, both parties were talking about the same job.  Therefore, in reviewing the directed verdict ruling, there is no issue with regards to Roghelia's job title and the description of his job; he was an out-by out-by laborer.

**{¶22}** Our attention now turns to the testimony and evidence about whether Roghelia was perceived as disabled.  Bruce Hann, vice president of the Ohio operations for Rhino Energy which includes Hopedale Mining, testified that at the time of Roghelia's termination, Roghelia was an out-by out-by laborer and that while he assumed that Roghelia had some pain occasionally, he did not perceive Roghelia as disabled.  Tr. 78.  Hann's testimony also included statements that when in late 2006 he learned that Roghelia was struggling with doing the shuttle car operator position because of pain in his hand, he had him moved to the out-by out-by position so that Roghelia could be accommodated better.  Tr. 84.  Hann indicated that in the out-by out-by position he could take a break when he needed to or he could be moved to a different job more easily.  He indicated that he did that to try to help Roghelia, not penalize him.  Tr. 84.

{¶23} Frederick Zirkle, Administration Manager at Hopedale Mining, also testified. He avowed that Roghelia, because of his injury, could not roof bolt, which seems to be an out-by category "job", but he seemed to indicate that Roghelia could do all other jobs in the out-by out-by laborer category. Tr. 147-148. The testimony shows that after coming back from workers' compensation leave, Roghelia was accommodated by being assigned to run the shuttle car. The testimony also shows that Roghelia had some pain in completing that task, however, he indicated it was nothing he could not put up with. Roghelia was eventually moved from that position and did the tasks of out-by out-by laborers. Nothing in Zirkle's testimony indicates that he perceived Roghelia as being disabled. It appears that they believed he could perform all job tasks in the out-by out-by category. Tr. 345-347.

{¶24} Roghelia also testified. He indicated that he could perform all jobs of out-by out-by laborer. Tr. 344-347. He testified that if his hand hurt that people helped out. Tr. 250. He indicated that he did not know if any employee complained about helping him out, but it could have happened. Tr. 250-251.

{¶25} The above testimony shows that the company made accommodations. However, as the next assignment of error explains, accommodations of this type alone do not show a perception of disability. Furthermore, it does not appear that the above testimony raises a question as to the mine's position that it did not perceive him disabled.

{¶26} That said, in addition to the above testimony, there are a couple of e-mails that each party focuses on to determine whether there was any evidence of a perceived disability. The first one is in regards to the shuttle car position. This e-mail states that when Roghelia is released to work on November 28, 2006, he will not be able to return to his previous job of out-by laborer and is released to perform all the functions of a shuttle car operator. Exhibit 7. Only being released to this position, which the Mine testified was not a classified position, but rather that out-by out-by laborers performed this position, might be an indication that the Mine viewed him as disabled and only able to perform this job. However, as explained above, he was moved from this position within a month to the out-by out-by laborer position and

there were no complaints from the Mine about his job performance in that position. Thus, potentially this e-mail could also show that Roghelia was not perceived as disabled.

{¶27} The second e-mail is the one concerning his termination. Hann wrote an email to Dave Zatezalo about Roghelia's absences in May and missing the last two rotations. Hann indicated that Roghelia could not be reached by phone. The e-mail shows the absences from 2004 through 2007, some of which were covered by workers' compensation. In response to this e-mail, Zatezalo wrote, "I am OK with this, but be careful as you know his background injury wise." Exhibit 12.

{¶28} This e-mail could be viewed two different ways. On one hand, it could show a perception of Roghelia being disabled because it references his injury. On the other hand, it is possible that the statement in the e-mail is just intended to make sure everything is done correctly; the head of the company may have been making a statement to make sure everything is done correctly because of the employee's injuries in the past. Where there has been a work place injury and then a later termination, an employer may want to make sure everything is done correctly in the termination because the existence of a prior injury may raise an argument, whether valid or invalid, of wrongful termination.

{¶29} When considering the e-mails in conjunction with the testimony, reasonable minds could reach different conclusions on whether Roghelia was perceived as disabled. Thus, the issue of whether Roghelia was perceived as disabled is a question for the tier of fact.

{¶30} In conclusion, this assignment of error has merit. The trial court used the wrong standard for determining perceived disability. Furthermore, given the evidence in this particular case, reasonable minds could reach different conclusions on whether Roghelia was perceived as disabled.

<u>Second Assignment of Error</u>

{¶31} "The trial court inverted the logic of the act prohibiting discrimination based upon the perception of disability when it indicated that the fact that the employer accommodated Roghelia meant that it did not perceive him as disabled."

{¶32} This assignment of error is closely related to the first assignment of error. The trial court indicated that the fact that the Mine accommodated Roghelia meant that it did not perceive him as disabled. Roghelia claims that this inverts the logic of the act.

{¶33} As aforementioned, there is evidence of accommodation. First, when Roghelia came back he was placed solely as a shuttle car operator. That was an accommodation because the Mine admits that there is not a specific job title for shuttle car operator; rather it is a job of an out-by out-by laborer. After a month he was moved to out-by out-by laborer. While he was in this position if his hand started hurting, he was permitted to take a break or they would move him to a different job. Roghelia argues that this demonstrates he was accommodated.

{¶34} The question we must answer is whether an accommodation of this type, or any accommodation for that matter, shows a perception of a disability.

{¶35} In 2002, we stated that, "[A] perceived disability cannot be established by a mere showing that the employer attempted to accommodate the employees perceived needs." *Lanterman v. Columbia Gas of Ohio, Inc.*, 7th Dist. No. 01CO54, 2002-Ohio-5224, ¶ 23 (Other than the accommodation e-mails between company management, Lanterman offers no evidence that CG perceived him as disabled. Affirming grant of summary judgment.), citing *Weigert v. Georgetown University* (D.D.C.2000), 120 F.Supp.2d 1. Likewise, the Tenth Appellate District has also rejected the argument that merely making an accommodation is evidence that the employer regarded the employee as disabled. *Myers v. McGrath*, 10th Dist. No. 06AP-616, 2007-Ohio-3228, ¶ 18 (using the Sixth Circuit decision in *Plant v. Morton Intl.*, 212 F.3d 929 (C.A.6, 2000) and its prior decision in *DeBolt v. Eastman Kodak Co.,* 146 Ohio App.3d 474, 2001-Ohio-3996, ¶ 61 to support its position that accommodations alone are insufficient to demonstrate that the employer regarded the employee as disabled).

{¶36} These results are logical. To find otherwise would mean that any time any sort of work place accommodation is made for the employee this automatically results in a conclusion that is perceived as disabled for purposes of disability

discrimination. Therefore, merely showing that an employee was accommodated is not sufficient to prove that the employer regarded the employee as disabled.

**{¶37}** Here, if only the accommodation is considered, there is not enough evidence to show a perception of disability. However, as discussed above, when considering the emails, potentially a different result could be reached. Therefore, this assignment of error is meritless.

<u>Third Assignment of Error</u>

**{¶38}** "The trial court erred in finding that no reasonable jury could find that the stated reason for terminating Roghelia was that a forbidden factor, such as a record of disability – or a perception of disability – was a determining factor in the employee's termination and could only conclude that Roghelia had violated the employer's absenteeism policy."

**{¶39}** Under this assignment of error, Roghelia asserts that assuming he established a prima facie case of perceived disability discrimination, the trial court erred in finding his disability was not a determining factor for his termination.

**{¶40}** As stated above, once an employee establishes a prima facie case of perceived disability discrimination, "the burden then shifts to the employer to set forth some legitimate, nondiscriminatory reason for the action taken." *Hood*, 74 Ohio St.3d 298. If the employer does so, "then the employee * * * must demonstrate that the employer's stated reason was a pretext for impermissible discrimination." *Id.*

**{¶41}** To establish pretext, the plaintiff must demonstrate the proffered reason "(1) has no basis in fact, (2) did not actually motivate the employer's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Sweet v. Abbott Foods, Inc.,* 10th Dist. No. 04AP–1145, 2005–Ohio–6880, ¶ 34, quoting *Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1084 (6th Cir.1994). "A reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." *Knepper v. The Ohio State Univ.,* 10th Dist. No. 10AP–1155, 2011-Ohio-6054, ¶ 12, citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515, 113 S.Ct. 2742 (1993). The plaintiff always has the ultimate burden of persuading the trier of fact that the defendant intentionally

discriminated against him. *Ohio Univ. v. Ohio Civ. Rights Comm.,* 175 Ohio App.3d 414, 2008-Ohio-1034, 887 N.E.2d 403, ¶ 67 (4th Dist.), quoting *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

**{¶42}** Hopedale Mining contends that it terminated Roghelia based on his absenteeism and that this was not a pretext. The trial court agreed and found that there was no evidence to support the conclusion that even if Roghelia was regarded as disabled, that he was terminated based on that perception, rather than on his absenteeism:

> * * * The evidence established that Mr. Roghelia had a cavalier attitude concerning his employer's requirements for "reporting off work" and providing doctor's excuses and that he violated his employer's attendance policy.
>
> At the time that Plaintiff's employment with Hopedale Mining LLC was terminated, he had called in on the first day of a four day rotation but had not spoken to his supervisor or followed up with a doctor's excuse. Although Plaintiff faxed a doctor's excuse to the mine the evening before his next rotation started, Plaintiff did not make personal contact with his employer concerning the second rotation he was going to miss. Mr. Roghelia was temporarily assigned to "light duty" in the hoist house when he was terminated for his "poor attendance." (See Plaintiff's Exhibit 19.)

08/02/13 J.E.

**{¶43}** At trial, Hopedale Mining indicated that Roghelia had absenteeism problems and that he was previously counseled about them. On one occasion where Roghelia was off for three weeks in 2005, he had a doctor's excuse that provided no reason for the time off, but excused him from work from August 14, 2005 to September 8, 2005. Tr. 194-195. Roghelia believes that this was due to high blood pressure and he was under doctor's instruction to relax. Tr. 195. During this period, Roghelia went away and got married. Tr. 195. There is a letter that was admitted as

Exhibit 13 that indicates that on August 29, 2005, the Mine considered him on FMLA leave. Exhibit 14 is a signed slip by D. Atkins of the Mine indicating he counseled Roghelia about his absenteeism on September 12, 2005. Roghelia asserted he was never counseled and that he had never seen this slip before the lawsuit was filed. Tr. 198. Exhibit 15 is a letter to Roghelia about his poor attendance that is dated September 13, 2005. This letter indicates that it serves as a letter of warning about his poor attendance and that he would be subject to disciplinary action, which could include discharge. The letter states that he is on probation for a year and indicates that the letter will be placed in his employee file. Roghelia admitted to getting this letter, but states he was confused by it because he thought that he was off on FMLA for the period this letter was referencing. Tr. 197-198.

{¶44} Another exhibit, Exhibit 16, admitted at trial, also shows that Roghelia was counseled about his absenteeism. It states that Roghelia was counseled by Bill Wright of Hopedale Mining on November 24, 2006. Roghelia claims that he was not counseled and the first time he saw this slip was after the lawsuit was filed. Tr. 180-181.

{¶45} Throughout the evidence there are lists of dates that Roghelia missed work. Some of it appears to be time caused by the two surgeries to his left hand. Other times were just for days he was absent without having any vacation days to use, such as one instance where he got hurt on a four wheeler and had to take time off of work.

{¶46} The last dates seemed to be a focus of the trial court. These were two shifts in May of 2007. Roghelia claims to have called in May 15 to timely report off because he was feeling faint. Tr. 186. He does not remember to whom he spoke. He testified that he could not get in to see the doctor until May 22. In the May 23 e-mail from Dave Zatezalo to Bruce Hann, Zatezalo stated, "Supposedly he [Roghelia] called in around 5.15 [sic] to report off for the entire rotation but no one knows who took the call." On May 22, Roghelia did not call in to report off for the rotation that started that day. Instead, he faxed a doctor's excuse from the Puskarich Public Library in Cadiz, Ohio, at 5:55 p.m. Exhibit 17. The doctor's excuse states that

Roghelia will not be able to return to work until May 28, 2007. Exhibit 17 and 18. Roghelia admits that he did not call in any other day than the 15th to report off work.

**{¶47}** Viewing this evidence in the light most favorable to Roghelia, we cannot conclude that reasonable minds could only reach one conclusion and that conclusion would be adverse to Roghelia. Instead, we hold that this is an issue best left to the trier of fact. The evidence could lead a reasonable person to conclude that Roghelia was terminated based on his excessive absenteeism, which was a legitimate nondiscriminatory reason for the termination. Or, a reasonable person could find that the absenteeism reason was pretext. Thus, the trial court incorrectly took this matter out of the hands of the jury. This assignment of error has merit.

## Conclusion

**{¶48}** In conclusion the first and third assignments of error have merit. The second assignment of error is without merit. The trial court used the wrong test in determining whether Roghelia was perceived as disabled. Furthermore, when considering the evidence using the correct test, a directed verdict on this matter should not have been granted. Whether Roghelia was perceived as disabled was a question for the jury and so was whether his termination was based on that perception or if it was based on his alleged violation of the employer's absenteeism policy. Reasonable persons could reach differing results on these issues.

**{¶49}** For the foregoing reasons, the judgment of the trial court is hereby reversed and the case is remanded for a new trial.

Waite, J., concurs.
DeGenaro, P.J., concurs.